UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICKI JEAN RUGG,

    Plaintiff,

v.    Case No. 1:18-cv-937

    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

    Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

    Plaintiff applied for benefits on July 27, 2015, with an alleged disability onset date of December 31, 2014. PageID.32. Plaintiff identified her disabling conditions as: pulmonary embolism; right side body weakness; post-traumatic stress disorder (PTSD); asthma; epileptic seizures; venous thrombosis; bilateral leg pain; problems walking; depression; convulsions; high cholesterol; anxiety; and migraines. PageID.237. Prior to applying for DIB and SSI, plaintiff completed two years of college and had training as a CNA and medical assistant. PageID.239. Plaintiff had previous employment as a CNA, medical assistant, personal attendant, and waitress. PageID.44. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 11, 2017. PageID.32-46. This decision, which was later approved by the

1

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2014, and that she met the insured status of the Social Security Act through December 31, 2019. PageID.34. At the second step, the ALJ found that plaintiff had severe impairments of: seizure disorder; lumbar spine radiculopathy; small fiber neuropathy; migraine headaches; obesity; history of pulmonary embolism, deep vein thrombosis and vertigo; asthma; conversion disorder; anxiety disorder; depressive disorder; and PTSD. PageID.35. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to occasional balancing, kneeling, crouching, crawling and pushing/pulling with the lower extremity. She can have no exposure to loud noises, ladders, ropes or scaffolds, unprotected heights or moving machinery. She can have no exposure to environmental irritants or poorly ventilated areas. She can have occasional interaction with the public.

PageID.38. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.44.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy.

4

PageID.45-46. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as surveillance system monitor (200,000 jobs), addresser (90,000 jobs), and ticket clerk (150,000 jobs). PageID.45. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 31, 2014 (the alleged onset date) through October 11, 2017 (the date of the decision). PageID.46.

### III. DISCUSSION

While plaintiff listed ten errors on appeal (PageID.2679-2680), she did not address any particular issue or error in a discrete argument. Rather, her brief consists of a 16-page narrative (PageID.2681-2696) arguing portions of issues in no particular order. Given plaintiff's presentation, the Court will re-align plaintiff's claims in a manner which allows for a review of the issues raised in the brief.[1]

### A. The ALJ erred in applying the listing of impairments

**The Administrative Law Judge failed to properly analize [sic] the plaintiff's impairments or combination of impairments to determine if she met or medically equalled an impairment listed in 20 CFR part 404, Subpart P Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.909) generally, and listings 1.00, 1.04, 11.02, 12.0 [sic], 12.06, 12.07 and 12.15, specifically. [Plaintiff's Error 3]**

**The Administrative Law Judge erred in concluding that the plaintiff's seizure disorder could not rise to the listing level required under listing 11.02, because she was non-compliant with her medication regimen, without citing evidence of record to support this conclusion and establishing that any such non-compliance was material to the plaintiff's ongoing symptoms. [Plaintiff's Error 5]**

---

[1] Both plaintiff's counsel and defendants' counsel failed to comply with the citation requirements of Administrative Order (AO) 16-MS-017. The purpose of this rule is to create an appropriate record under the Court's electronic filing system. Specifically, plaintiff and defendant placed unnecessary spaces and periods within "PageID" citations. These spaces are not recognized by the Court's electronic filing system. Counsel should review the administrative order to make sure that their citation format is correct in future court filings.

"[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§404.1525(d) and 416.925(d). In contesting an ALJ's evaluation of a listing,

> A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a "substantial question" as to whether he has satisfied a listing. . . Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.

*Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).

### 1. Listing 1.04

Plaintiff contends that the ALJ erred in finding that she did not meet or equal Listing 1.04. The ALJ addressed this listing as follows:

> The claimant's lumbar radiculopathy does not rise to listing level severity under listing 1.04. This listing requires an impairment resulting in the compromise of a nerve root or spinal cord. Additionally, the claimant would need evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. She would also need positive straight-leg raising in the sitting and supine positions. In the alternative, the claimant could have spinal arachnoiditis, confirmed by an operative note, pathology report, or acceptable imaging. The spinal arachnoiditis would need to manifest in severe burning or painful dysesthesia,

> resulting in the need for the claimant to change position or posture more than once every two hours. If the claimant does not have either of the preceding options, she could show that she has lumbar spinal stenosis resulting in pseudoclaudication, established by finding on acceptable imaging, that manifests in chronic nonradicular pain and weakness, which results in the inability for the claimant to ambulate effectively. The inability to ambulate effectively means an extreme limitation of the ability to walk (l.00B2b(l)). Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities (l.00B2b(l)). The inability to perform fine and gross movement effectively means an extreme loss of function of both upper extremities (l.00B2c). While the claimant appeared at the hearing with a rolling walker, she acknowledge [sic] it was given to her after rehabilitation in 2015. As further discussed below, there are no objective findings to medically support the continued need for the walker. The claimant's back impairment does not rise to the severity required under listing 1.04.

PageID.35 (emphasis added).

Plaintiff contends that the ALJ failed to cite exhibits to show objective findings in support of the listing. Plaintiff contends that she meets the listing because her medical records contain objective medical evidence of a compromised nerve root a L5-S1 and at the right sural nerve, that she has limited motion in the lumbar spine, that she has motor loss accompanied by sensory loss and lower body weakness, and that she had evidence of a positive straight leg raising test. PageID.2683. Plaintiff does not cite under which paragraph of Listing 1.04 she claims to be disabled (1.04A, 1.04B, or 1.04C). However, the conditions she listed are the criteria considered under Listing 1.04A.

Nerve root compression is a necessary element of Listing 1.04A. However, defendant points out that there is no evidence of nerve root compression. An August 2015 MRI scan of plaintiff's lumbar spine revealed "broad based disk protrusion at L4-L5 level resulting into moderate right and mild left neural foraminal narrowing." PageID.1569. A consulting neurologist, Sirajeddin Belkhair, M.D., examined plaintiff on October 7, 2015. PageID.1556. The doctor reviewed the August 2015 MRI and noted that "there is no indication to do a Surgical

7

Decompression as it is not severe and it's not impinging the nerve root." PageID.1557. Plaintiff has not demonstrated that she meets a required element of Listing 1.04A. Accordingly, plaintiff's claim of error is denied.

    2.    **Listing 11.02**

Plaintiff contends that she meets this Listing based upon her seizure disorder and her migraine headaches.

    a.    **Seizure disorder**

Plaintiff contends that "the Administrative Law Judge discusses many alternate ways the Plaintiff's medical records could show that she meets the requirements of listing 11.02, but she never discusses the application of any of the Plaintiff's medical evidence to the elements contained in the listing." PageID.2685-2686. Rather, the ALJ concluded that plaintiff's seizure disorder did not rise to the level of severity because she was non-compliant with her medication regimen. *Id*. The ALJ addressed this listing with respect to seizure disorder as follows:

> [T]he claimant's seizure disorder does not rise to listing level severity under listing 11.02 Epilepsy. This listing requires that the claimant's generalized tonic-clonic seizures occur more than once a month for at least three consecutive months in spite of adherence of prescribed treatment. Alternatively, the claimant could experience dyscognitive seizures that happen at least once a week for at least three consecutive months despite adherence to prescribed treatment. Additionally, the claimant's seizure disorder could rise to listing level severity if the evidence shows generalized tonic-clonic seizures that occur at least once every two months for at least four consecutive months despite adherence to prescribed treatment and result in a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Further, the record could show dyscognitive seizures that occur at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment and result in a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. As the evidence shows, the claimant was noncompliant with medication regimen, therefore, the claimant's seizure disorder does not rise to this level of severity.

PageID.36.

The ALJ denied plaintiff's claim for epilepsy because she was non-compliant with the medication regimen. However, defendant admits that the ALJ's statement on this issue was "not accurate." *See* PageID.2704 at fn.6. Plaintiff states that she has had 20 or more grand mal seizures and many more dyscognitive seizures during the relevant time period. PageID.2686 (citing record). Plaintiff also states that her medical record contains detailed descriptions of her seizures, "including blackouts, tremors, unresponsiveness, loss of consciousness, falling to the ground, weakness, fatigue, malaise, headaches, slurred speech, drowsiness, decreased attention, neck pain, achiness, throbbing, loss of awareness, loss of memory, confusion, generalized shaking, muscle soreness, lip biting, staring, gazing upward generalized motor activity, postictal confusion, anxiety, loss of balance and involuntary movements." PageID.2687 (citing record).

Plaintiff has identified specific evidence that demonstrates she reasonably could meet or equal every requirement of the listing. *See Smith-Johnson*, 579 Fed. Appx. at 432. The ALJ did not address this evidence in a meaningful fashion when evaluating plaintiff's claim of seizures under Listing 11.02. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate whether plaintiff's history of seizures meets the requirements of Listing 11.02.

        **b.**      **Migraine headaches**

Plaintiff contends that the ALJ did not properly evaluate her migraine headaches. The ALJ addressed plaintiff's migraine headaches under Listing 11.02 as follows:

> Following Agency policy 09-036, Rev. 7, the undersigned considered also migraine headaches under Listing 11.02 for medical equivalence. Listing 11.02 is not medically equaled as the evidence does not support B) a detailed description from someone, preferably a medical professional, who has observed at least one typical headache event describing all associated phenomena, the frequency of headache events despite adherence to prescribed treatment, information about

9

> alteration of consciousness, the effect on attention or being cognizant of one's surroundings and external phenomena as well as one's personal state, or limitations in functioning that may or may not be associated with the effects of migraine treatment, such as interference with activity during the day, or D) the overall effects of migraines on functioning, particularly whether there is a marked limitation in any of the areas of functioning: physical functioning; understanding, remembering, or applying information, interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

PageID.36.

Plaintiff contends that the ALJ did not properly evaluate her migraine headaches. Plaintiff sets out a lengthy list of medical records which she states contain detailed descriptions of her headaches, including

> photophobia, muscle spasms, phono phobia, fatigue, blurred vision, flashing lights, insomnia, nausea, vertigo, vomiting, neck pain and stiffness, weakness, pain pounding on temples and frontal area, dizziness, right eye pain, pressure/head pain, memory loss, confusion, difficulty concentrating, heat intolerance, anxiety and unresponsiveness to oral medications.

PageID.2687 (citing record).

Plaintiff has identified specific evidence that demonstrates she reasonably could meet or equal every requirement of the listing. *See Smith-Johnson*, 579 Fed. Appx. at 432. The ALJ did not address this evidence in a meaningful fashion when evaluating plaintiff's claim of migraine headaches under Listing 11.02. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate whether plaintiff's history of migraine headaches meets the requirements of Listing 11.02.

### 3. Listing 12.07

Plaintiff contends that the combined effects of her multiple impairments meet or equal Listing 12.07. The ALJ did not address this particular listing. As the court explained in *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639 (6th Cir. 2013), an ALJ is not required to address every listing:

> The relevant regulations require the ALJ to find a claimant disabled if he meets a listing. Yet they do not require the ALJ to address every listing—and with ample reason. There are a hundred or so listings. In the normal course, as a result, the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. If, however, the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled" under a listing, the ALJ should discuss that listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990).

*Sheeks*, 544 Fed. Appx. at 641.

Here, the plaintiff states that she "believes that the combined effects of her multiple impairments meet or equal listing 12.07." PageID.2682. Plaintiff did not set forth the elements of Listing 12.07 or demonstrate that her diagnosis of conversion disorder meets each of the elements of that listing. Accordingly, plaintiff's claim of error is denied.

### 4. Other listings

Plaintiff's claim of error includes Listings "12.0" [sic], 12.06, and 12.15. However, plaintiff does not develop any arguments with respect to these listings. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

### B. Residual functional capacity (RFC) claims

**The Administrative Law Judge's residual functional capacity is not supported by substantial evidence of record. [Plaintiff's Error 1]**

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained

performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff contends that the ALJ failed to address her RFC. As discussed, *supra*, plaintiff did not address any of her claims in a discrete argument. The Court will address the alleged errors listed below.

> **The Administrative Law Judge erred in concluding that there were "no objective findings to medically support the continued need for the walker". [Plaintiff's Error 4]**

The ALJ noted that plaintiff appeared at the administrative hearing with a walker and acknowledged that it was given to her after rehabilitation in 2015. PageID.35. In evaluating plaintiff's RFC, the ALJ cited medical records from October 2015 which reflect that plaintiff was using a walker and wheelchair to help with ambulation. PageID.40. Neurology clinic notes from April 2016 reflect that plaintiff had difficulties standing and walking, had assistance with a wheelchair, and had episodes of falling. PageID.41. While the ALJ cites medical evidence regarding plaintiff's use a wheelchair or walker, she also finds that,

> Although the claimant is obese, in spite of her weight issues clinicians often observed adequate ambulation, functional range of motion, no extremity clubbing, cyanosis, and no diminished pulsation. The records do not show a medical need for sustained use of a wheelchair or walker for ambulation assistance. During the period at issue, the claimant underwent no orthopedic surgical intervention and she not had recurrent hospitalizations or emergent care for her reported conditions.

PageID.43. The record indicates that plaintiff used a walker or wheelchair for at least some period of time in 2015 and 2016. Plaintiff contends that "[n]owhere in the medical records, is there any recommendation from any of her multiple treaters that she should discontinue using the walker, the wheelchair, the bed, bath or toilet aids, the handicap ramp or the handicap parking permit." PageID.2685 (citing records).

It is unclear on how the ALJ reached the conclusion that plaintiff did not show a medical need for the sustained use of a wheelchair or walker. While the ALJ acknowledged that

12

plaintiff had some serious health problems and used those devices, she did not address how long plaintiff needed them. While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). The Court cannot follow the ALJ's path of reasoning on this issue. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should address the extent to which plaintiff needed a wheelchair or walker to ambulate and, if appropriate, make adjustments to plaintiff's residual functional capacity consistent with that re-evaluation.

> **The Administrative Law Judge's residual functional capacity assessment was improper, since it did not include all of the claimant's impairments, both severe and non-severe, in determining which physical and mental work activities the plaintiff can still do on a sustained basis, despite the limitations related to all of her impairments. [Plaintiff's Error 2]**
>
> **The Administrative Law Judge erred in not including the following additional limitations in the plaintiff's residual functional capacity: avoid exposure to more than moderate light and heat, vibration, standing longer than 10-15 minutes, walking greater than 10-15 feet without a walker or greater than one block with a walker, sitting greater than 15 minutes, the need for a sit–stand option, ability to use a walker or wheelchair on the job, the need to avoid work requiring sustained concentration, fast paced production work or quotas, the need to avoid work requiring more than occasional changes in the work setting, the need to limit jobs to 1-2 step unskilled work, and the need to avoid ramps and stairs, balancing, kneeling, squatting, crouching and crawling. [Plaintiff's Error 6]**

> **The Administrative Law Judge committed numerous factual errors, including that the plaintiff continued to work after the alleged onset date, that she was able to use public transportation, shop in stores alone and without the use of an amigo, attend doctor's appointments without great difficulty, care for her children without assistance from her mother or the children's father, prepare family meals (rather than just occasionally warming up meals others had prepared), and complete chores around the house (other than folding clothes or wiping down the table from her wheelchair), and didn't need to continue to use assistive devices for any extended ambulation. [Plaintiff's Error 9]**

Plaintiff has raised a number of alleged errors with respect to the ALJ's RFC determination. Plaintiff's objections to the ALJ's RFC determination are spread throughout her brief, in no apparent order, with no attempt to address the claims in an organized manner. Some of plaintiff's claims appear to be based on her testimony. PageID.2689. Some of plaintiff's objections conflate the ALJ's findings at step 3 (with respect to whether her mental impairments meet the requirements of the listings) with the RFC evaluation at step 4. *See* PageID.2688-2689, 2692-2693.[2] Some of plaintiff's objections are broad general statements, such as the ALJ's evaluation of her mental limitations "is found at page 6 of her decision, and it is very inaccurate", and the ALJ "suggests that she takes care of her four children, does her own personal care, prepares own meals and shops without help. This simply is not true." PageID.2688. In addition, plaintiff also refers to portions of medical opinions without addressing how those opinions are evaluated by the ALJ or by this Court on appeal. PageID.2691-2693.

Plaintiff's brief does not address the issue of whether the ALJ's RFC determination is based on substantial evidence. Rather, she is seeking a paragraph-by-paragraph de novo review of her claim. This Court does not review the evidence de novo, make credibility determinations

---

[2] *See* PageID.38 (the ALJ points out that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.").

or weigh the evidence. *Brainard*, 889 F.2d at 681. Even if this Court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147. Accordingly, plaintiff's claims of error are denied.

**C. The hypothetical questions posed to the vocational expert were improper because they did not accurately describe the plaintiff's residual capacity and failed to provide a proper foundation for the vocational expert's testimony. [Plaintiff's Error 7]**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. While plaintiff claims error related to the hypothetical questions posed to the vocational expert, she does not develop any argument on this issue. Rather, she simply contends "that the hypothetical questions posed to the vocational expert were improper because they did not accurately describe the Plaintiff's residual functional capacity" and that "[w]ithout the use of proper hypothetical questions, there is no foundation for the vocational expert's testimony." PageID.2694. The Court deems these cursory arguments waived. *See McPherson*, 125 F.3d at 995-96 ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

**D. The Administrative Law Judge failed to properly consider the plaintiff's credibility pursuant to SSR 96-7p. [Plaintiff's Error 8]**

15

"The Plaintiff maintains that any analysis of her credibility was flawed by the Administrative Law Judge's slanted interpretation as to what the medical records, the Plaintiff's hearing testimony, and the adult functional report contain." PageID.2695. In this regard, plaintiff contends that the ALJ failed to follow the procedure set forth in SSR 96-7p. PageID.2694. Plaintiff's claim is without merit, because her "credibility" was not an issue in this case. The ALJ reviewed her claim pursuant to SSR 16-3p. *See* PageID.38 (in determining plaintiff's RFC, "the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p"). SSR 16-3p superseded SSR 96-7p and eliminated term "credibility" from the disability evaluation process, stating in pertinent part:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

SSR 16-3p, 2017 WL 5180304 at *2 (Oct. 25, 2017) (republication with revisions). The ALJ was required to proceed under SSR 16-3p when she decided the case.[3] The record reflects that she did. Plaintiff's argument regarding a credibility finding, as raised in her brief, was not at issue. Accordingly, plaintiff's claim of error is denied.

> **E. The Administrative Law Judge erred in speculating as to why the plaintiff had an inconsistent earning record, when she failed to even question the plaintiff about this issue during the hearing. [Plaintiff's Error 10]**

---

[3] *See* SSR 16-3p (2017 WL 5180304 at *13, fn. 27) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016.").

Plaintiff contends that "[t]he Administrative Law Judge also seemed to be confused by an office note suggesting that the Plaintiff worked after her alleged onset date. (Page ID .40, .44)." PageID.2695. In her decision, the ALJ mentioned the note relative to a neurological examination in September 2015:

> [T]he claimant described radiating lumbar spine pain. She also reported a history for anxiety related seizures and headaches. Despite her complaints and evidence of an antalgic gait, she continued to work as a nurse aide while doing home health care 33 hours per week. Sometimes she worked a 12 to 15 hour day.

PageID.40.

In addressing the severity of plaintiff's alleged symptoms, the ALJ mentioned plaintiff's work history and "the fact that the claimant worked after her alleged onset date and collected unemployment benefits suggests that she may be capable of competitive fulltime employment consistent with the RFC adopted." PageID.44.

Plaintiff objects, stating: that the entry about her work history was found prior to the alleged onset date "and continually repeated in her medical records thereafter;" that plaintiff testified that she stopped working in December 2014 or January 2015, as confirmed by her earnings record; and that the ALJ had elsewhere concluded in the decision that " 'Plaintiff has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date.' (Page ID .34)." PageID.2695.

The ALJ's reference to work performed after the alleged onset date does not affect plaintiff's claim. The ALJ found that plaintiff's income of $583.00 posted in the first quarter of 2015 was not disqualifying substantial gainful activity. PageID.34. With respect to unemployment benefits, the ALJ noted that "in the first and second quarter of 2015, the claimant received unemployment benefits totaling $2,776.00 and $2,820.00," and "[t]he fact that the claimant received unemployment benefits after her alleged onset date makes the seriousness of her claims

17

less persuasive in light of her attestation that she was able and available for work (Ex. C3D-C7D)." PageID.34-35.

The ALJ could properly consider plaintiff's application for and receipt of unemployment benefits as an indication that she had the capacity to work. "This district, as well as the Sixth Circuit, has recognized the apparent contradiction between a claimant seeking disability benefits while simultaneously receiving unemployment compensation." *Davis v. Commissioner of Social Security*, No. 1:15-cv-0652, 2016 WL 3769406 at *5 (W.D. Mich. July 15, 2016). *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent."). The receipt of unemployment benefits is only one of many factors to be considered in determining whether a claimant is disabled. *See Davis*, 2016 WL 3769406 at *5. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate whether plaintiff's history of seizures and migraines meet the requirements of Listing 11.02. The Commissioner is also directed to re-evaluate the extent to which plaintiff needs a wheelchair or walker to ambulate and, if appropriate, make adjustments to plaintiff's residual functional capacity consistent with that re-evaluation. A judgment consistent with this opinion will be issued forthwith.

Dated: March 31, 2020 /s/ Ray Kent
United States Magistrate Judge

18